IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: SC SJ HOLDINGS, LLC, *et al.*, | ) | Chapter 11 |
| | ) | Case No. 21-10549 (JTD) |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| SC SJ HOLDINGS, LLC, *et al.*, | ) | |
| | ) | |
| Appellants, | ) | C.A. No. 22-689 (MN) |
| | ) | |
| v. | ) | |
| | ) | |
| PILLSBURY WINTHROP SHAW | ) | |
| PITTMAN LLP, | ) | |
| | ) | |
| Appellee. | ) | |

## **MEMORANDUM OPINION**

Michael Busenkell, Ronald S. Gellert, Bradley P. Lehman, GELLERT SCALI BUSENKELL & BROWN, LLC; Michael T. Mihm, Jason B. Wesoky, James E. Fogg, OGBORN MIHM LLP, Denver, CO – Special Counsel to Reorganized Debtors.

John D. Demmy, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE; Brad D. Brian, Bethany W. Kristovich, MUNGER, TOLLES & OLSON LLP, Los Angeles, CA – Counsel to PILLSBURY WINTHROP SHAW PITTMAN LLP.

March 22, 2023
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is an appeal by reorganized debtors SC SJ Holdings, *et al*. ("Debtors") from the Bankruptcy Court's May 12, 2022 *Order Denying Motion to Relieve Reorganized Debtors from Certain Aspects of the Confirmed Third Amended Joint Chapter 11 Plan as to Pillsbury Only* (D.I. 1-1) ("Order").  The Order denied Debtors' motion pursuant to Rule 60 of the Federal Rules of Civil Procedure ("FRCP 60"), made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure ("FRBP 9024"), for relief from certain releases contained in their confirmed plan, solely as those releases pertain to their bankruptcy counsel, Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"), under theory that the plan contains prospective malpractice releases obtained without Debtors' informed consent in violation of Pillsbury's ethical obligations under Rule of Professional Conduct 1.8(h).[1]  For reasons set forth on the record at the May 4, 2022 hearing (A1357-1365) ("5/4/2022 Tr."),[2] including that sections 1127 and 1144 of the Bankruptcy Code state the only means by which a plan confirmation order may be modified or revoked, the Bankruptcy Court denied Debtors' motion for relief.  For the reasons set forth herein, the Court will affirm the Order.

---

[1]  *See, e.g.*, ABA Model Rule of Professional Conduct 1.8(h), which provides, in relevant part, that "A lawyer shall not . . . make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement."  Available at:  https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_8_current_clients_specific_rules/.

[2]  The docket of the chapter 11 cases, captioned *In SC SJ Holdings, LLC, et al.*, Case No.  21-10549 (JTD) (Bankr. D. Del.) is cited herein as "Bankr. D.I. ___."  The appendix (D.I. 23) filed in support of Pillsbury's answering brief (D.I. 22) is cited herein as "A___;" and the appendix (D.I. 26) filed in support of Debtors' reply brief (D.I. 25) is cited herein as "B___."

## I.    BACKGROUND

### A.    The Chapter 11 Cases

Debtors operated an 805-room luxury convention hotel in San Jose, California ("Hotel"), which experienced financial difficulties due to the COVID-19 pandemic.  (A29-31 ¶¶ 4, 10). Beginning in the fall and winter of 2020, the Hotel's operator, Fairmont, refused requests for financing and would not agree to a consensual termination of the Hotel Management Agreement ("HMA") so that Debtors could pursue financing from other hotel operators.  (A33 ¶ 17).  Debtors retained Pillsbury in July 2020 to provide advice on "considering and developing chapter 11 options."  (A911-13).  In March 2021, with economic conditions having only worsened, Debtors filed voluntary chapter 11 petitions.  Debtors identified three core objectives for the bankruptcy: (1) engage with their pre-petition secured lender to restructure and extend the maturity date of their secured mortgage loan; (2) terminate the relationship with Fairmont; and (3) find a new brand for the Hotel that would be willing to provide additional financing.  (A8 ¶ 28).

### B.    The Plan's Release Provisions

As part of the negotiations among Debtors and various constituents, the Plan went through a number of revisions between March and August 2021.  (*See, e.g*., A37, A96, A155, A460, A523, A587).  Each version of the Plan contained substantively identical release, exculpatory, and injunctive provisions.  The release provisions provide for mutual releases among numerous parties as to any claims arising out of or related to the bankruptcy proceedings or to Debtors.  Those release provisions cover Debtors' "Related Persons," defined to include their "attorneys . . . and other professionals."  (A790, A792, A829-830).  The release provisions also expressly exculpate Debtors and their "Professionals" from claims and causes of action arising out of post-petition conduct, with the exception of claims of intentional fraud and willful misconduct.  (A783, A832-

833).[3]  The release provisions were highlighted in various disclosure statements as well as in the Plan solicitation materials approved by the Bankruptcy Court and noticed to all creditors, parties in interest, and stakeholders.  (*See* A217; A301; A401-459).  Debtors' sole principal, Sam Hirbod, submitted sworn testimony to the Bankruptcy Court in support of the Plan specifically addressing its release provisions.  (A710-716).  Mr. Hirbod affirmed that the releases were in Debtors' best interest and integral to their successful reorganization.  (A713-714 ¶¶ 10-14).

The Bankruptcy Court approved the plan of reorganization ("the Plan") that achieved Debtors' objectives (A717-770) ("the Confirmation Order").  The Bankruptcy Court found that the release provisions in the Plan were set forth in bold type, contained "specific and conspicuous language," had been "negotiated in good faith and at arm's length," and were "each integral to the Plan, supported by valuable consideration, and necessary for the Debtors' successful reorganization."  (A721, A727).  The Bankruptcy Court also found that Debtors' releases were "given and made after due notice and opportunity for hearing" and that the exculpations were "reasonable in scope."  (A738, A740).

Debtors later asserted, and continue to assert on appeal, that "[t]he Plan contains five-and-one-half pages of release, exculpatory, and injunctive legal jargon in bold, all-caps lettering that makes it impossible to identify defined terms without cross-referencing each word in those provisions against the Plan's 179 defined terms, many of which cross reference one another. (*See* A931-932; D.I. 21 at 8).

---

[3]     The release provision and the exculpation provision are enforced by an injunction provision, which specifies that "the releasing parties shall be permanently enjoined from commencing or continuing in any manner against the debtor released parties . . . and the exculpated parties." (A833-834).  This Memorandum Opinion refers to all three provisions together as the "release provisions."

### C.      The Fairmont Arbitration

Fairmont filed proofs of claim against the Debtors in the amount of approximately $36 million for claims under the HMA. Fairmont also commenced an arbitration action asserting breach of the covenant of good faith and fair dealing. The Bankruptcy Court ordered the Debtors to arbitration and estimated Fairmont's claim for plan feasibility purposes at $22.24 million. (A930 ¶ 4). On August 18, 2021, the Bankruptcy Court entered the Confirmation Order. The six-day arbitration between Debtors and Fairmont began on September 22 and concluded on October 16, 2021. The Plan went effective on November 8, 2021. (A844). The parties agree that the Plan was substantially consummated the same day. On November 9, 2021, the arbitration panel issued a Final Arbitration Award ("the Final Award"), setting Fairmont's damages for Debtors' breach of the covenant of good faith and fair dealing at approximately $13 million. (A933 ¶ 8). The arbitrators found such a breach based on Debtors' "shopping [of] the brand." (*Id.*).

Not surprisingly, the parties disagree as to the events that led to the Fairmont dispute. Those facts have no bearing on this appeal, and the parties' arguments are briefly summarized here only to provide context for Debtors' subsequent motion for relief. In general, Debtors wish to assert malpractice claims on the grounds that (i) Pillsbury failed to inform Debtors that "having discussions with other [hotel brands] violated the HMA's implied covenant of good faith and fair dealing" and advised the Debtors that Fairmont's sole remedy at law for terminating the HMA was its liquidated damages provision, which would amount to approximately $2 million; and (ii) "Pillsbury's advice essentially and unnecessarily created two paths of expensive litigation, the bankruptcy and the arbitration." (D.I. 21 at 7-8). Pillsbury disputes these contentions, asserting that it "was not made aware of the details of Mr. Hirbod's brand-changing efforts or provided with a copy of the HMA until after November 2, 2020, and Pillsbury was not asked for any advice with

respect to brand-changing efforts until after November 2, 2020 – that is, until after Mr. Hirbod undertook the secretive rebranding efforts that led to the damage award."  (D.I. 22 at 9 n.3).

### D.     Debtors' Motion for Relief

On February 28, 2022 – more than 180 days after the entry of the Bankruptcy Court's August 18, 2021 Confirmation Order and long after the November 8, 2021 substantial consummation of the Plan – Debtors filed a motion, pursuant to FRCP 60 and FRBP 9024,[4] asking the Bankruptcy Court for an order "relieving [them] from certain aspects of the confirmed Third Amended Joint Chapter 11 Plan of Reorganization."  (A928).  Debtors asked the Bankruptcy Court to "modify" the Plan's release provisions, which Debtors admitted barred them from bringing their desired legal malpractice claims against Pillsbury.  (A934, A940, A943-44, A946).  Debtors asserted, among other things, that (i) prior to the Plan's effective date, Debtors were unaware of Pillsbury's alleged malpractice, and (ii) Pillsbury failed to advise Debtors of the import of the Plan's release provisions.  Debtors argued that the Bankruptcy Court had the authority to grant such relief under FRBP 9024 on several bases including changed circumstances and excusable neglect. (*See* A928, A944).  Pillsbury objected to Debtors' motion, explaining that it was improper and untimely under the Bankruptcy Code and FRBP 9024, contained a revisionist account of the "facts," and was otherwise entirely without merit.  (A965-85).  Debtors then filed a reply in which they asserted, for the first time, that the Due Process Clause of the Constitution provided a basis for the Bankruptcy Court to grant Debtors' requested relief.  (A1196-98).

On May 4, 2022, the Bankruptcy Court held a hearing and based on the undisputed facts denied Debtors' motion for relief as a matter of law.  (5/4/2022 Tr. at 76-84).  The Bankruptcy

---

[4]     FRCP 60 permits the Court to relieve a party from a final judgment, order, or proceeding for reasons including, but not limited to, mistake, inadvertence, surprise, excusable neglect; newly discovered evidence; or fraud, misrepresentation, or other misconduct of an adverse party.  *See* Fed. R. Civ. P. 60(b)(1)-(6).  Pursuant to Bankruptcy Rule 9024, Rule 60 applies to contested matters such as this matter.  *See* Fed. R. Bankr. P. 9024.

Court determined that Debtors' request for "relief" from the Plan really sought modification of the Plan or revocation of the Confirmation Order, which could be accomplished only under Bankruptcy Code §§ 1127 or 1444.  (5/4/2022 Tr. at 77-78; *see id*. at 84 (explaining that Debtors were effectively seeking to "writ[e] the releases and exculpation provisions out of the order" with respect to Pillsbury); 11 U.S.C. §§ 1127, 1144).  The Bankruptcy Court concluded that Debtors did not satisfy the requirements for relief under either of those provisions.

The Bankruptcy Court further explained that, under § 1127(b), a movant may seek plan modification only before a plan's substantial consummation – and Debtors did not seek relief here until well after the Plan was confirmed and substantially consummated.  (5/4/2022 Tr. at 78-79).  Debtors also could not seek revocation of the Confirmation Order under § 1144, the Bankruptcy Court found, because they undisputedly filed their motion outside of § 1144's 180-day post-confirmation deadline – a deadline that "is strictly enforced and may not be extended" for any reason.  (*Id*. at 79).  The Bankruptcy Court rejected Debtors' argument that a purported breach of ethical obligations by Pillsbury allowed for an exception to § 1144's plain-text requirements.  (*Id*. at 80-81).  In addition, the Bankruptcy Court ruled that the limitations on relief set forth in §§ 1127 and 1144 cannot be circumvented by means of a motion for relief under FRBP 9024.  (*Id*. at 78-80).  Having disposed of the entire motion as a matter of law, the Bankruptcy Court declined Debtors' request to hold an evidentiary hearing for purposes of an appeal.

  **E.**  **Appeal**

On May 26, 2022, Debtors filed a timely notice of appeal of the Order.  (D.I. 1).  The appeal is fully briefed.  (D.I. 21, 22, 25).  The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.      JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).  The Confirmation Order is a final order.  The Order denying Debtors' request for relief from the Confirmation Order is also a final order.

Whether the Bankruptcy Court erred in ruling, as a matter of law, that the plain text of §§ 1127 and 1144 bars Debtors' request for relief from the release provisions of the substantially consummated plan of reorganization – including whether FRBP 9024, which makes FRCP 60 applicable to bankruptcy proceedings under certain circumstances, overrides those statutes – is a purely legal issue reviewed *de novo*.  *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998).  Whether Pillsbury's actions violated the Due Process Clause is a purely legal issue that is also reviewed *de novo*. *See id*.  Finally, Debtors argue that the Bankruptcy Court erroneously declined to hold an evidentiary hearing.  The Court reviews that decision for abuse of discretion. *See id.*

## III.     ANALYSIS

Debtors sought relief from the Plan's release provisions pursuant to FRCP 60(b)(5), which authorizes relief where "it is no longer equitable that a judgment should have prospective application."  (A935-36 (*quoting In re Lebanon Steel Foundry*, 48 B.R. 520, 523 (Bankr. M.D. Pa. 1985))).  Debtors argued that modification of the terms of an injunctive decree was within the Bankruptcy Court's discretion "if the circumstances, whether of law or fact, obtaining at the time of the issuance have changed, or new ones have since arisen."  (*Id*. (quoting *In re Lebanon*, 48 B.R. at 523)).  Debtors contended that they only learned of Pillsbury's incorrect advice regarding Fairmont after the Plan was confirmed, and that this change in "factual circumstances" warranted relief from the Plan's release provisions.  (A936).  Debtors further argued that FRCP 60(b)(1)'s excusable neglect provision permitted relief.  (A944).  Thus, Debtors' main argument on appeal is

that relief they sought was available under FRCP 60(b), and that the Bankruptcy Court erred in determining that §§ 1127 and 1144 of the Bankruptcy Code – requirements of which they failed to meet – provided the exclusive means of relief.  (*See* D.I. 21 at 14-26).

### A.   Plan Modification Is Barred By § 1127 of the Bankruptcy Code

#### 1.   Section 1127 Bars Plan Modification

Section 1127(b) states, in relevant part, that "[t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and ***before substantial consummation of such plan***."  11 U.S.C. § 1127(b) (emphasis added).  Accordingly, by its plain terms "section 1127(b) is an absolute bar to modification after substantial consummation."  *In re NorthEast Gas Generation, LLC*, 639 B.R. 914, 922 (Bankr. D. Del. 2022).

The Bankruptcy Court recognized that § 1127(b) is "the exclusive means by which to modify a [Chapter 11] plan."  (*See* 5/4/2022 Tr. at 77-78 (citing *In re Logan Place Properties, Ltd.*, 327 B.R. 811, 812 (Bankr. S.D. Tex. 2005) and *In re Vencor, Inc.*, 284 B.R. 79, 87 (Bankr. D. Del. 2002)).  *See also, In re Rickel & Assocs., Inc.*, 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001) ("Section 1127(b) provides the sole means for modifying a confirmed plan."); *In re Daewoo Motor Am., Inc.,* 488 B.R. 418, 426-27 (C.D. Cal. 2011); *In re WBY, Inc.,* 2019 WL 3713686, at \*10-11 (Bankr. N.D. Ga. Aug. 5, 2019); 7 Richard Levin & Henry J. Sommer, eds., Collier on Bankruptcy ¶ 1127.03[2][a] (16th ed. 2022).

The parties do not dispute that Debtors' motion for relief was filed after the Plan had been substantially consummated.  The Plan was substantially consummated, and became effective, on November 8, 2021.  (*See* A844; *see also* A770).  Debtors did not file their motion in the Bankruptcy Court until February 28, 2022 – nearly four months after substantial consummation.  (*See* A949).  Rather, Debtors argue that the Bankruptcy Court erred in determining that § 1127(b) applies at all to their motion and that it bars relief from the Plan's release provisions.

## 2.      **Debtors' Motion for Relief Sought Plan Modification**

Debtors' primary argument, repeated throughout their briefs, is that § 1127(b) did not apply to their request for relief because they are not seeking any "modification" of the Plan.  (*See, e.g.*, D.I. 21 at 2, 13-14, 16-17, 19-22, 25).  Rather, Debtors contend, they merely seek "limited relief" from the Plan – specifically, "to have the Bankruptcy Court determine that those portions of the Release Provisions applicable to Pillsbury were improperly obtained and, ineffective, and thus unenforceable, thereby granting limited relief from the provisions to allow Debtors to pursue malpractice claims against Pillsbury" – and "[s]uch relief is appropriate under Rule 9024 and Rule 60."  (*Id.* at 13).  According to Pillsbury, Debtors want a change to the Plan that is directly contrary to the Plan's express provisions, so there is no question that what they seek constitutes a "modif[ication]" within the meaning of § 1127(b) – regardless of the magnitude of that change. (D.I. 22 at 20-21).

The Court agrees that Debtors' motion for relief really sought a modification of the Plan within the meaning of § 1127(b).  As an initial matter, the motion candidly and repeatedly urges the Bankruptcy Court to "modify the Plan so as to permit Debtors to pursue malpractice claims against Pillsbury."  (A940; *see, e.g.*, A943 ("this Court should ***modify*** the provisions that stand to prevent Debtors from fully and fairly presenting their malpractice case against Pillsbury") (emphasis added; quotations, alterations, and citations omitted); A944 ("***modification*** of the Plan is appropriate") (emphasis added); A946 ("this Court should ***modify*** the Plan") (emphasis added)).

Nevertheless, "the Court will consider the substance rather than the form of the requested relief."  *In re Logan*, 327 B.R. at 813.  As many courts have held, a "requested change" that "is directly contrary to the express provisions of the [p]lan" constitutes a modification within the meaning of § 1127(b).  *In re Daewoo Motor*, 488 B.R. at 425-26 (collecting cases); *see, e.g., NorthEast Gas Generation*, 639 B.R. at 924 (party is not asking merely "to interpret, clarify, or

fill a gap in the Plan" where "[t]he proposed modification is contrary to the express terms of the Plan"); *In re Planet Hollywood Int'l*, 274 B.R. 391, 399-400 (Bankr. D. Del. 2001) (party seeking "relief inconsistent with the Plan" is seeking a modification of that Plan); *In re Vencor*, 284 B.R. at 82-85. A change contrary to the express provisions of the Plan is precisely what Debtors' motion for relief sought. The Plan provides that Debtors release from any liability their "attorneys . . . and other professionals," a category that includes Pillsbury. (A829-30 (stating that "Debtor Released Parties" are "conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged" by Debtors "from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, and causes of action, losses, remedies, or liabilities whatsoever" relating (*inter alia*) to Debtors or the chapter 11 proceedings); *see* A781, A793 (defining "Debtor Released Parties" to include Debtors' "Related Persons," which includes attorneys)). Debtors' motion seeks to change the release provisions of the Plan so that they no longer cover Pillsbury. (*See* 5/4/2022 Tr. at 76-77). Without that modification, as Debtors have acknowledged, the release provisions bar the malpractice claims against Pillsbury that Debtors wish to assert. (D.I. 21 at 1 ("The Release Provisions preclude malpractice claims against Pillsbury"); 5/4/2022 Tr. at 83-84) ("In order to bring a lawsuit against Pillsbury for malpractice, debtors need to modify the confirmation order effectively writing the releases and exculpation provisions out of the order.")).

Contrary to Debtors' argument, the fact that they wish to modify the release provisions to carve out only one particular group of attorneys, while leaving those provisions in place as to all other attorneys, other professionals, and principals, does not take Debtors' requested relief outside of the scope of § 1127(b). That provision limits all plan modifications, regardless of the magnitude of the requested change. *See, e.g., NorthEast Gas Generation*, 639 B.R. at 922-24 (ruling that changing a single definition in a plan constituted a modification for purposes of § 1127); *In re WBY*, 2019 WL 3713686, at *11. Indeed, in a decision on which the Bankruptcy Court here relied

(5/4/2022 Tr. at 77-78), a bankruptcy court in this District characterized a change in a plan's releases to exclude one previously covered party – relief almost identical to that sought here – as a modification within the meaning of § 1127(b). *See In re Vencor*, 284 B.R. at 85 (concluding that "striking the releases granted to Ventas in the Plan . . . is a modification of the Plan").

### 3.   FRCP 60/FRBP 9024 Cannot Be Used to Circumvent § 1127

The Bankruptcy Court further concluded that FRBP 9024 is "inapplicable" as a means of circumventing § 1127(b)'s prohibition on modification of a plan after substantial consummation. (5/4/2022 Tr. at 78-80 (citing *In re Logan*, 327 B.R. at 812-14)). Debtors argue on appeal that the Bankruptcy Court erred in determining that FRCP 60, made applicable by FRBP 9024, was inapplicable to Debtors' request for relief. (D.I. 21 at 1). The Court disagrees.

As the Third Circuit has explained, a rule of procedure cannot "negate the substantive impact of [a] restriction contained" in a provision of the Bankruptcy Code or "validly provide" a movant "with a substantive remedy that would be foreclosed by" such a statutory provision. *In re Fesq*, 153 F.3d 113, 116-17 (3d Cir. 1998) (discussing 11 U.S.C. § 1330); *see* 28 U.S.C. § 2075 (federal bankruptcy rules cannot "abridge, enlarge, or modify any substantive right"); 28 U.S.C. § 2072 (same as to federal rules of civil procedure). A rule can do no more than "define the process" by which the substantive rights set forth in the Code can be effected. *In re Fesq*, 153 F.3d at 116; *see, e.g., Midstate Mortg. Invs., Inc.,* 105 F. App'x 420, 423 n.4 (3d Cir. 2004); *In re Rodriguez*, 521 F. App'x 87, 92 (3d Cir. 2013); *see also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

Applying that well-established principle, courts have held that "[FRCP] 60(b) cannot be invoked to bypass § 1127(b)." *In re Rickel*, 260 B.R. at 678. If a debtor could modify a plan after substantial consummation under FRCP 60/FRBP 9024, even though § 1127(b) provides that such

modification can occur only before substantial consummation, then the rules of procedure would "produce a result at odds with the specific provisions of § 1127(b)." *Id.*; *see Fesq*, 153 F.3d at 116; *see also, e.g., NorthEast Gas Generation*, 639 B.R. at 924-25 (neither FRCP 60 nor bankruptcy court's equitable powers under § 105 permit plan modification after substantial consummation to circumvent the requirements of § 1127(b)); *In re Vencor*, 284 B.R. at 85; *In re Ionosphere Clubs, Inc.*, 208 B.R. 812, 816-17 (S.D.N.Y. 1997); *In re Indu Craft Inc.*, 2011 WL 2619501, at *3 (Bankr. S.D.N.Y. July 1, 2011), *aff'd*, 580 F. App'x 33 (2d Cir. 2014); *In re Logan*, 327 B.R. at 814-15; *In re Planet Hollywood*, 274 B.R. at 399; *In re Daewoo Motors*, 488 B.R. at 426-27; *In re Xpedior Inc.*, 354 B.R. 210, 232 (Bankr. N.D. Ill. 2006). And as Pillsbury correctly points out, the refusal to permit an end run around § 1127(b) serves important interests. Allowing a debtor to change the terms of a plan that has already been substantially consummated would "upset[] the legitimate expectations" of the entities and individuals affected by the plan and would ultimately "undermine the integrity" of the bankruptcy process, as necessary players would not be willing to "participate in reorganization if they could not feel that the plan was final." *In re Fesq*, 153 F.3d at 119-20; *see id.* at 119 (explaining that "Congress established finality as an important goal of bankruptcy law").

### 4.       <u>Authorities Cited By Debtors Require No Different Ruling</u>

The cases cited by Debtors do not support their position that plan modification can be accomplished under FRCP 60(b) even where § 1127(b) would not permit that modification. As Pillsbury points out, several of those cases apply FRCP 60(b) outside of the context of plan modification, such that § 1127(b) plays no role in the analysis.[5] While a few of the other cases

---

[5]       *See In re Johnson & Morgan Contractors*, 29 B.R. 372 (Bankr. M.D. Pa. 1983) (stipulated order related to lift stay); *In re Lebanon Steel Foundry*, 48 B.R. 520 (Bankr. M.D. Pa. 1985) (same); *In re F.A. Potts & Co., Inc.*, 86 B.R. 853, 854 (Bankr. E.D. Pa. 1988) (order authorizing an asset sale); *In re Durkalec*, 21 B.R. 618, 619 (Bankr. E.D. Pa. 1982) (lift

cited by Debtors discuss FRCP 60(b) with respect to confirmation orders or plans, they do not

discuss § 1127(b) at all, and therefore do not constitute persuasive precedent regarding whether a

FRCP 60(b) motion is barred where § 1127(b)'s limitations on plan modification are exceeded.

*See In re Benjamin's-Arnolds, Inc.*, 1997 WL 86463, at *2 (Bankr. D. Minn. Feb. 28, 1997) (plan

modification); *In re Griffin Oil Co.*, 149 B.R. 419, 421 (Bankr. E.D. Tex. 1992) (effectiveness of

confirmation order); *In re 401 E. 89th St. Owners, Inc.*, 223 B.R. 75, 79 (Bankr. S.D.N.Y. 1998)

(same).  Debtors also cite the *Whelton* case, as the court distinguished the relief sought in that case

in the following way: "This action is not, however, an action to revoke a confirmation order, but

rather to declare one of the provisions of a confirmed plan void."  (*See* D.I. 21 at 16-17) (quoting

*Whelton v. Educ. Credit Mgmt. Corp.*, 432 F.3d 150, 156 n.2 (2d Cir. 2005) *abrogated on other*

*grounds by United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010)).  But as the Supreme

Court noted, that case is contradicted by binding Third Circuit precedent ruling that FRCP 60(b)

cannot be used to circumvent a provision of the Bankruptcy Code.  *See United Student Aid Funds,*

*Inc. v. Espinosa*, 559 U.S. 260, 270 n.9 (2010) (contrasting *Whelton v. Educ. Credit Mgmt. Corp.*,

432 F.3d 150, 156 (2d Cir. 2005) with *In re Fesq*, 153 F.3d at 119 n.8).  Finally, Debtors cite *In re*

*BNW, Inc.*, 201 B.R. 838 (Bankr. S.D. Ala. 1996), but as Pillsbury correctly argues, that case

concluded that FRCP 60(b)'s requirements were not satisfied and therefore never reached or

analyzed the interaction between FRCP 60(b) and § 1127(b).  *See id.* at 846-47.  And to the extent

that BNW could be read to suggest that FRCP 60(b) might apply even where § 1127(b) bars relief,

that suggestion is inconsistent with the Third Circuit's ruling that a bankruptcy rule cannot

overcome a limitation in the Bankruptcy Code.  *See In re Fesq*, 153 F.3d at 116-17.  Finally,

Debtors contend that *In re Vencor* and *In re Logan*, on which the Bankruptcy Court relied in its

---

stay order); and *In re Lewis Rd., LLC*, 2011 WL 6140747, at *1 (Bankr. E.D. Va. Dec. 9,
2011) (settlement agreement under Bankruptcy Rule 9019).

ruling, are distinguishable. Even assuming that is correct, the discussion above illustrates that those decisions are hardly the only ones supporting the Bankruptcy Court's § 1127(b) analysis.

### 5. Debtors' Remaining Arguments Are Unavailing

Debtors assert that application of § 1127(b) in this case does not serve the finality interests underlying that provision, asserting that a change in the release provisions would not "impact the finality of the [confirmation] order as to Debtors or its creditors." (D.I. 21 at 19). This Court does not assess the applicability of a statutory provision by asking whether its overarching purposes are directly served in any particular case; rather, it looks to the provision's plain language, and then applies that language by its terms. *See, e.g., Lawrence v. City of Phila.*, 527 F.3d 299, 316-17 (3d Cir. 2008) ("except in the rare instance when the court determines that the plain meaning is ambiguous," the "plain meaning of the [statutory] text should be conclusive"); *see also Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896, 1905 (2022) (court cannot adopt "an interpretation that would eviscerate . . . significant aspects of the statutory text"). The plain language of § 1127(b) admits of no exceptions. Debtors further contend that they should not be held to the requirements of § 1127(b) because they could not have requested relief prior to substantial consummation. (D.I. 21 at 19; D.I. 25 at 7-8). The plain text of § 1127(b) does not provide any exception to the requirement that modification must be requested before substantial confirmation. Congress decided that the timing requirement applies regardless of the circumstances. Finally, Debtors contend that the relief they ask for would not violate § 1127(b) because the Plan provides that it "may be amended, modified, or supplemented by the Debtors in accordance with section 1127 of the Bankruptcy Code or as otherwise permitted by law." (D.I. 21 at 22 (citing Plan § 11.1)). The Plan provision does not advance Debtors' cause. The Plan states that it may be modified under § 1127 or "as otherwise permitted by law." (*Id.*) Contrary to Debtors' apparent argument, the phrase "as otherwise permitted by law" does not indicate that modification under some other authority is

permitted by law – let alone under the circumstances presented here, where § 1127(b) affirmatively bars modification after substantial consummation.  Debtors point to no lawful means by which the Plan could be modified in light of § 1127(b)'s express language.

### B.    Revocation of Confirmation Order Is Barred Under § 1144

#### 1.    Section 1144 Bars Revocation of Confirmation Order

Debtors further insist that they do not seek revocation here, so the Bankruptcy Court's application of § 1144 to their motion for relief was erroneous.  (D.I. 21 at 20).  Conversely, Pillsbury argues that, to the extent that Debtors are not seeking to modify the Plan's release provisions, they are necessarily seeking to revoke the Confirmation Order so as to render those provisions of no force and effect as to Pillsbury.  (D.I. 22 at 33).  "Because as a matter of law there is no such thing as partial revocation of a Confirmation Order's terms, Debtors must necessarily be seeking to revoke that order in its entirety."  (*Id*. (citing *Rodriguez*, 521 F. App'x at 91-92 (a confirmed plan is "the plan in all respects, and one cannot take a piece of it, and say that the rest of it remains intact, therefore, the order of confirmation is not disturbed.")))  Pillsbury is correct. If the release provisions are not modified and they are not revoked, then they continue to bind Debtors and bar Debtors' proposed malpractice action.

As the Bankruptcy Court explained, "the debtors seek to either modify the provisions of the plan to avoid the release provisions or [to] revoke the plan" so as to render the release provisions of no force and effect.  (5/4/2022 Tr. at 77).  The Bankruptcy Court correctly ruled that revocation is barred by the plain terms of § 1144, which provides that "[o]n request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud."  (*Id*. at 79-81 (citing 11 U.S.C. § 1144)).  Just as § 1127(b) is the sole means of modifying a plan, § 1144 is the "only means by which a confirmation order may be . . . revoked."

(*Id*. at 77-78) (quoting *In re Vencor*, 284 B.R. at 87); *see also In re Logan*, 327 B.R. at 812-14
(§ 1144 provides the exclusive means by which to vacate a plan"); *In re Longardner & Assocs.,*
*Inc.*, 855 F.2d 455, 460 (7th Cir. 1988) ("section 1144 is the only avenue for revoking confirmation
of a plan of reorganization").

To the extent Debtors' motion for relief can be read as a motion for revocation of the
Confirmation Order, Debtors have not complied with the strict requirements of § 1144.  Debtors
did not file their motion within 180 days of confirmation.  (5/4/2022 Tr. at 81).  Debtors also have
not sought to revoke the confirmation order on the grounds of fraud.  (*See* A927-49; A958-59).
Section 1144 is clear that a court "may revoke such order if and only if such order was procured
by fraud." 11 U.S.C. § 1144.  Both of those flaws are independently fatal to Debtors' motion for
relief.  (*See* 5/4/2022 Tr. at 79 (explaining that "Section 1144's 180-day limitation is strictly
enforced and may not be extended even if the fraud" on which a revocation request is based "is
not discovered until the period has passed") (citing *Midstate Mortg.*, 105 F. App'x at 423)).

## 2.    FRCP 60/FRBP 9024 Cannot Be Used to Circumvent § 1144

Debtors appear to contend that the Bankruptcy Court erred in ruling that FRCP 60(b) and
FRBP 9024 cannot be used to make an end run around the strictures of § 1144.  But like § 1127(b),
§ 1144 cannot be circumvented by means of a motion under FRCP 60 and FRBP 9024.  FRBP 9024
expressly states that FRCP 60 applies "in cases under the Code ***except that . . . a complaint to***
***revoke an order confirming a plan may be filed only within the time allowed by § 1144***
[governing revocation in Chapter 11 cases], § 1230 [governing revocation in Chapter 12 cases], or
§ 1330 [governing revocation in Chapter 13 cases]." Fed. R. Bankr. P. 9024 (emphasis added).
To the extent Debtors seek revocation of the Confirmation Order, and they did not file their motion
within the 180-day period allowed by § 1144.  By its own terms, then, FRBP 9024 cannot aid
them.

In *In re Fesq*, the Third Circuit directly addresses § 1144's analog under Chapter 13 –
§ 1330, which is worded almost identically to § 1144 and provides that "[o]n request of a party in
interest at any time within 180 days after the date of the entry of an order of confirmation . . . , the
court may revoke such order if such order was procured by fraud."  11 U.S.C. § 1330(a).  In *In re
Fesq*, a creditor of a Chapter 13 debtor sought to vacate a confirmation order under FRCP 60(b)
on the basis of "excusable neglect," claiming that a computer error caused the creditor's counsel
to miss the deadline for filing an objection.  153 F.3d at 114-15.  The court of appeals concluded
that, because the motion was filed more than 180 days after confirmation, it was barred by § 1330,
the Chapter 13 analog to § 1144.  *Id*. at 115.  The court rejected an argument that FRCP 60 allowed
revocation notwithstanding §1330, reasoning that a procedural rule could not provide a remedy
foreclosed by statute.  *Id*. at 116-17.  In other words, the terms of § 1330, and § 1144, mean
precisely what they say: the only ground for revoking a confirmation order is an allegation of fraud
made within 180 days.  The Third Circuit has subsequently followed that holding in a series of
unpublished decisions.  *See, e.g., In re Rodriguez*, 521 F. App'x at 92; *In re Midstate Mortg*.,
105 F. App'x at 423 & n.4.  The Court agrees that the Third Circuit's ruling as to the interaction
between § 1330, FRCP 60, and FRBP 9024 is directly applicable to § 1144 as well.

Debtors argue that some courts "disagree" with the Third Circuit "as to whether a
Rule 60(b)(4) motion, which seeks relief from a judgment on the basis that the judgment is void,
should be treated as a 'complaint to revoke' a plan subject to § 1330's time limit and substantive
limitation to motions based on fraud."  (D.I. 21 at 25).  This Court is, of course, bound by the Third
Circuit's precedential decision in *In re Fesq*, whatever other courts may have ruled.

### 3.   Debtors' Malpractice Claims Are Not "Independent" of the Plan

Debtors argue that § 1144 does not apply here to bar relief because proceeding with a
malpractice action would not "redivide the pie" of assets that the Plan divided but rather would

17

give Debtors a claim for some additional recovery.  (D.I. 21 at 23-25).  Debtors rely on two decisions: *In re Genesis Health Ventures, Inc.*, 355 B.R. 438 (Bankr. D. Del. 2006), and *In re Coffee Cupboard, Inc.*, 119 B.R. 14 (E.D.N.Y. 1990).  In those decisions, courts considered whether post-confirmation damages claims, which were not expressly addressed or blocked by any provision in the confirmed plan, were nevertheless so intertwined with the confirmed plan that allowing the claims to proceed would be "tantamount to revoking the plan."  *In re Genesis*, 355 B.R. at 445; *see In re Coffee Cupboard*, 119 B.R. at 18-20.  To make that assessment, both courts analyzed whether the relief sought would be tantamount to revocation because it would "upset [the] confirmed plan" in some way – for example, by changing the way that money would be distributed under the plan (*i.e.*, "redivid[ing] the pie") – or whether the relief sought was instead "independent" of the plan.  *In re Genesis*, 355 B.R. at 444-48; *see In re Coffee Cupboard*, 119 B.R. at 18-20.  That analysis has no bearing where, as here, the confirmed Plan contains an express provision foreclosing the claims Debtors wish to pursue.  The Bankruptcy Court correctly rejected this argument.

### 4.   Section 1144 Contains No Exception for Purported Ethical Violations

Debtors argue that § 1144 "is not applicable to" requests for relief where purported ethical violations give rise to late discovery of the basis for a request.  (D.I. 21 at 26-29).  This Court need not reach any factual issues in order to affirm the Bankruptcy Court's decision.  The statute contains no exception for purported ethical violations, and the Bankruptcy Court did not err in declining to create one out of whole cloth.  (*See* 5/4/2022 Tr. at 80-81).  Debtors insist this is a "matter of first impression."  (D.I. 21 at 26).  More accurately stated, there no authority for Debtors' argument that this Court should create an exception in derogation of the statute's plain text.

Finally, the Court must rejects Debtors' suggestion that the Plan's release provisions as they relate to Pillsbury are unusually broad or ethically improper.  (D.I. 25 at 4).  Bankruptcy courts routinely approve chapter 11 plans with release provisions substantively identical to the ones here.  Debtors reference the "special rule" governing bilateral agreements between a lawyer and a client, which, among other things, requires that such agreements be made with the client's "full knowledge of all material circumstances."  (D.I. 21 at 30 (quoting *Swift v. Choe*, 647 N.Y.S. 2d 17, 20 (N.Y. App. Div. 1998))).  A chapter 11 plan of reorganization is not a bilateral agreement between lawyer and client.  It is negotiated among a number of parties, subject to a court-approved disclosure statement that is noticed for creditor vote and stakeholder objection, and it is reviewed and approved by a bankruptcy court.  Courts have rejected attempts to invalidate exculpatory provisions in chapter 11 plans on grounds that they violate ethical rules.  *See, e.g., In re Stearns Holdings*, *LLC,* 607 B.R. 781, 791 (Bankr. S.D.N.Y. 2019) (holding that New York's rule of professional conduct restricting attorney release of malpractice liability "has no bearing on the standard of care established in an exculpation provision contained in a plan").  The Bankruptcy Court correctly did the same.

### C.   Due Process

Debtors argue that the Bankruptcy Court erred by not addressing their due process challenge.  (*See* D.I. 21 at 29).  Debtors did not present a due process argument in their opening brief below, instead raising it only in reply.  (*See* A1196-98).  Debtors argue that Pillsbury had a full opportunity to address, and did in fact address, Debtors' due process argument during the May 4, 2022 hearing, and never objected to such due process argument as untimely or prejudicial.  *See* 5/4/22 Tr. at 27-28.  The law is clear, however, that "[i]ssues raised for the first time in a reply brief should not be heard."  *Teleconference Sys*. *v. Proctor & Gamble Pharmaceuticals, Inc*., 676 F. Supp. 2d at 331 n.13; *see also In re Insys Therapeutics*, 2021 WL 3083325, at *2 n.7 (noting

that because an argument "was not raised in the opening brief" the court "need not consider it"). Because the issue was not properly raised in Debtors' opening brief below, the Bankruptcy Court committed no error in failing to address it. *See Jaludi v. CitiGroup*, 933 F.3d 246, 256 n.11 (3d Cir. 2019) (an argument raised for the first time in a reply brief in the district court is forfeited).

In any event, Debtors' argument that Pillsbury's actions somehow deprived Debtors of Constitutional due process is unavailing. (D.I. 21 at 29-37). The due process guarantee – whether derived from the Fifth Amendment or the Fourteenth Amendment – applies only to wrongful acts by government actors and has no application to "private conduct," even if that conduct is "discriminatory or wrongful." *Jackson v. Metro. Edison Co*., 419 U.S. 345, 349 (1974) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)) (internal quotation marks omitted); *see Warren v. Gov't Nat. Mortg. Ass'n*, 611 F.2d 1229, 1232 (8th Cir. 1980) ("The standard for finding federal government action under the fifth amendment is the same as that for finding state action under the fourteenth amendment").

Pillsbury asserts that it is a private law firm whose actions cannot give rise to a due process claim. According to Debtors, Pillsbury's "private conduct" argument is a red herring. (D.I. 25 at 13). Because the Plan containing the release provisions was confirmed by an order of the Bankruptcy Court, Debtors argue, "it is the government, *i.e.,* the Bankruptcy Court, depriving Debtors of due process." *Id*. "The Bankruptcy Court's decision to deny Debtors even the opportunity to present evidence – including an offer of proof – demonstrates the extent of the due process denial in this case." *Id.*

Procedural due process requires only that a person affected receive "notice and opportunity to be heard" before a deprivation of liberty or property. *Jeannot v. Philadelphia Hous. Auth*., 356 F. Supp. 3d 440, 452-53 (E.D. Pa. 2018); *see LaChance v. Erickson*, 522 U.S. 262, 266 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard.").

Debtors had notice of their own plan of reorganization.  Debtors' principal reviewed the plan and submitted a declaration discussing and endorsing the Plan's release provisions.  (*See* A713-14 ¶¶ 10-14).  Debtors had many opportunities to raise any issues they may have had with the release provisions or any other aspect of the Plan, including before the confirmation hearing, at the confirmation hearing, and at any time within the statutory time limit to modify the Plan.  Finally, Debtors had counsel other than Pillsbury with whom to discuss the release provisions.[6]  That Debtors may now wish to have better focused on the release provisions appliable to Pillsbury – or that they had more time to seek to modify the plan – does not create a due process deprivation.

The Court finds no support for Debtors' additional argument that the Bankruptcy Court erred by ruling as a matter of law without an evidentiary hearing.  (*See* D.I. 1 at 38-39).  The ability of a court to rule as a matter of law, without trial or a hearing, is beyond dispute.  It is something courts do every day, in granting motions for judgment on the pleadings or for summary judgment. Here, the Bankruptcy Court correctly determined that Debtors' factual arguments were immaterial because their claims were untimely.  The Bankruptcy Court therefore had no need to waste time taking testimony that could not change the outcome of the matter.  Debtors' argument that the Bankruptcy Court was required to hold an evidentiary hearing (and to do so after it had already conclusively ruled on the merits of the motion based on undisputed facts) rests on an incorrect reading of Bankruptcy Rule 9014(d), which provides that "[t]estimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding."  Fed. R. Bankr. P. 9014(d).  The language of that rule makes clear that live testimony is needed only if the factual dispute is "material."  A fact is "material" only if it "might affect the

---

[6]     The record reflects that, in addition to in-house attorneys Hamed Adib and Linda Tran (A995-96, A999, A1010-97), Debtors were represented by separate bankruptcy counsel at Cole Schotz.  (A1245).  In addition, by no later than September 2021 (nearly two months before the Plan's effective date), Debtors had consulted with separate counsel (LimNexus LPP) to advise them on potential objections to Pillsbury's fee applications.  (A1181-86).

outcome" of the dispute "under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (discussing materiality in the context of summary judgment). As Debtors' motion was untimely, there was no need for an evidentiary hearing, and the Bankruptcy Court was well within its discretion in declining to hold one.

## IV.   <u>CONCLUSION</u>

The Court finds no error in the Bankruptcy Court's holdings, including that Debtors' motion for relief sought a modification of the Plan within the meaning of § 1127 of the Bankruptcy Code, that any such modification is barred after substantial consummation, that Debtors cannot circumvent the time limits imposed by §§ 1127 and 1144 by relying on FRCP 60/FRBP 9024, and that those statutes contain no exceptions for purported ethical violations. For the reasons set forth herein, the Order is affirmed. An appropriate order will be entered.